UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-61679-CIV-COHN/SELTZER

CATHY PAFUMI, PARIS MCKINZIE,
MARIA CAPORICCI, and DOUGLAS
ZEMSKY,

**SCANNED**

        Plaintiffs,

vs.

Major General (Ret.) MICHAEL W.
DAVIDSON, ROBERT YAW, II, SECURE
SOLUTIONS HOLDING, INC., a Nevada
Corporation, and LAIDLAW & CO. (UK), LTD.,
a Foreign Limited Partnership,

        Defendants.
_____/

Major General (Ret.) MICHAEL W.
DAVIDSON,

        Counter - Plaintiff,

vs.

CATHY PAFUMI, PARIS MCKINZIE,
MARIA CAPORICCI, DOUGLAS
ZEMSKY, and PAUL HARARY

        Counter - Defendants.
_____/

## ORDER GRANTING IN PART  MOTIONS TO DISMISS AND FOR SANCTIONS
## FINAL ORDER OF DISMISSAL WITH PREJUDICE

    THIS CAUSE is before the Court upon the parties' Motions To Dismiss and for

Sanctions [DEs 199, 203, 205, 221, 229] ("Motions to Dismiss"), the Responses [DE

226, 227, 235, 237], the Replies [DE 230, 231, 238, 240, 241], the Sur Reply [DE 245],

and the Status Report [DE 265]. The Court has considered each of these pleadings, as well as Defendants' Motions for Sanctions Pursuant to the Private Securities Litigation Reform Act [DEs 104, 105, 106 and 128], Plaintiffs' Responses to these motions [DEs 118[1] and 131], Defendants' Replies [DEs 123, 124, 126 and 132], Defendants' supplemental filings in support of these Motions for Sanctions [DEs 139 and 140], the oral arguments heard by the undersigned on November 14, 2006, and is otherwise fully advised in the premises.

## I. BACKGROUND

On February 26, 2007, Cathy Pafumi, Paris McKinzie, Maria Caporicci and Douglas Zemsky ("Plaintiffs") filed their Second Amended Complaint against Maj. General (Ret.) Michael W. Davidson ("Davidson"), Robert Yaw, II ("Yaw"), Secure Solutions Holding, Inc. ("Secure Solutions" or "SSLX"); and Laidlaw & Co. (UK), Ltd. ("Laidlaw").[2]

It is alleged that individual defendants, Yaw and Davidson, exercising dominion and control over SSLX and Centuria Corp., engaged in a scheme to defraud the Plaintiffs by misappropriating the business model and assets of SSLX and causing a substantial reduction in the value of the shares. (Second Amended Complaint, DE 153, p. 4, ¶ 11,12.) Laidlaw also allegedly participated in the scheme to defraud the Plaintiffs. (Id., at ¶ 10, 13.) The specified scheme to defraud included: (1) individual

---

[1] Plaintiffs' Response, DE 118, appears to be identical to DE 120. Therefore, any reference to DE 118 would also apply to DE 120.

[2] The Second Amended Complaint did not include Maj. General (Ret.) Bruce M. Lawlor ("Lawlor") or Centuria Corp. ("Centuria"). Lawlor and Centuria, Corp. are hereinafter referred to as the "Centuria Defendants."

2

defendants making material misrepresentations to the SEC which caused the SEC to issue a trading halt in shares of SSLX that prevented the Plaintiffs from selling their shares of SSLX, and (2) individual defendants misappropriating the business model and assets of Secure Solutions and directing it for their own benefit. (Second Amended Complaint, DE 153, p. 11, ¶ 34.) Additionally, despite misappropriating the business model and assets of Secure Solutions and transferring everything to Centuria, it is alleged that the individual defendants continued to put forth misleading press releases and the Secure Solutions Offering Statements. (Id., at 17 - 20.)

The Amended Complaint contains eight counts:

1.    Count I: Violations of the Securities and Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder Against Secure Solutions and Yaw;

2.    Count II: Violation of Section 20(a) of the Exchange Act Against Yaw;

3.    Count III: Violation of Florida Statutes, Chapter 517, Against Yaw and Secure Solutions;

4.    Count IV: Breach of Fiduciary Duty Against Davidson and Yaw;

5.    Count V: Common Law Fraud Against All Defendants[3]

6.    Count VI: Civil Conspiracy Against All Defendants

7.    Count VII: Violation of Section 12(a)(2) Against Yaw and Secure Solutions; and

8.    Count VIII: Violations of the Securities and Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder Against Yaw for Insider Trading.

---

[3] Count V as alleged against Defendant Laidlaw & Company (UK) Ltd., was dismissed without prejudice. (Order Granting In Part Defendant Laidlaw & Company (UK) Ltd.'s Motion to Dismiss the Second Amended Complaint, DE 175.)

After the Court granted Defendants' Motion to Dismiss [DE 99], Defendants filed Motions for Sanctions Pursuant to the Private Securities Litigation Reform Act ("PSLRA Motions") [DEs 104, 105, 106 and 128]. Oral argument was heard on the PSLRA Motions on November 14, 2006. However, the Court granted in part the Motion for Reconsideration and allowed Plaintiffs to file a Second Amended Complaint. (Order Granting In Part Motion for Reconsideration and Motion for Leave to Amend, DE 141.) Therefore, there was no final adjudication, and the PSLRA Motions were premature. In the Order denying the PSLRA Motions as premature, the Court stated that "[s]ince the PSLRA requires the Court to make Rule 11 findings upon final adjudication, the Court will issue such findings at that time without the need for Defendants to renew their Motions." (Order, DE 142, p. 3.) As a result, the Court took the Motions under advisement.

Later, Laidlaw, Davidson, Lawlor, Centuria and Yaw all supplemented the prior PSLRA Motions and moved to dismiss the Second Amended Complaint and for sanctions. The central theme of these motions is embodied in the Laidlaw Motion [DE 199] which is joined by Davidson and Yaw.[4] (Davidson Joinder, DE 203; Yaw Joinder, DE 221.) The Centuria Defendants also filed a Motion incorporating the Laidlaw Motion. (Centuria Defendants' Motion, DE 205.) Davidson and the Centuria Defendants provided additional argument to supplement the Laidlaw Motion.

---

[4] Davidson withdraws his request for sanctions against Plaintiffs or Harary, individually, but otherwise maintains his joinder in Laidlaw's Motion for Sanctions. (Joint Status Report by Defendants, DE 265.)

4

(Davidson's Motion, DE 229; Centuria Defendants' Motion, DE 205.)

Responses to the various Motions to Dismiss and for Sanctions include: Arnstein & Lehr's Response [DE 227]; Plaintiffs' Motion for Voluntary Dismissal [DE 226]; Plaintiffs' Responses [DEs 235, 237]; and Adorno & Yoss' Motion for Court Guidance [DE 216].[5]  Defendants filed multiple replies.  Laidlaw filed three replies: Laidlaw Reply 1 [DE 230]; Laidlaw Reply 2 [DE 231];[6] Laidlaw Reply 3 [DE 238].[7]  The only other Reply that adds additional argument is the Centuria Defendants' Reply [DE 241]. Plaintiffs then filed a Sur-Reply [DE 245].

## II. ANALYSIS

### A. Sanctions Pursuant to the Court's Inherent Powers

#### 1. Plaintiffs and Paul Harary[8]

The Court has the discretion to fashion appropriate sanctions for conduct which abuses the judicial process.  Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).  In fashioning appropriate sanctions, the Court has the inherent power to impose sanctions on parties, lawyers or both.  In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th

---

[5] By Court Order, Adorno & Yoss was not required to respond any further to the Motions to Dismiss and for Sanctions.  (Order, DE 220.)

[6] Adopted by Lawlor & Centuria [DE 241].

[7] Adopted by Davidson, as well as Lawlor and Centuria [DEs 240, 241].

[8] In order to determine whether a fraud has been perpetrated on the Court, the Court reviewed the SEC enforcement proceeding, SEC v. Harary and Zemsky, 9:07-cv-80875 (KAM)(S.D. Fla. 2007), as well as the two criminal proceedings, United States v. Harary, 1:07-cr-00209 (EGS)(U.S. Dist. Columbia 2007), United States v. Zemsky, 1:07-cr-00246 (EGS)(U.S. Dist. Of Columbia 2007).  Chambers v. NASCO, 501 U.S. 32, 44 (1991); Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1335 (11th Cir. 2002).

Cir. 2006). Attorneys' fees and costs may be assessed against the client or the attorney, or both "when either has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Byrne v. Nezhat,, 1106 (11th Cir. 2001). In general, "the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when a less drastic sanction would not ensure compliance with the court's orders." In re Sunshine Jr. Stores, Inc., 456 F.3d at 1306 (internal citation and quotation omitted).

The court's inherent power to sanction includes sanctioning non-parties for bad faith conduct. See generally, Chambers, 501 U.S. at 41. However, additional safeguards may be warranted when a non party is being sanctioned. For example, a non party must "(1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered." Helmac Products Corp v. Roth (Plastics) Corp., 150 F.R.D. 563, 568 (E.D. Mich. 1993).

At the outset, the Court notes that Harary did not contend that he could not be sanctioned because he was a non-party. In fact, quite the opposite, after the Plaintiffs were proceeding pro se, Harary's signature appears on filings. (Plaintiffs' Request for Voluntary Dismissal, DE 226; Plaintiffs' Response, DE 235) Furthermore, it is evident that Harary was the real party in interest with respect to the claims brought by McKinzie and Caporicci and participated in the actions underlying the Second Amended Complaint. Harary testified that he controlled and used the accounts held in the name of his wife, McKinzie, advised his mother-in-law, Caporicci, and operated as the "go between" between "the Generals" and Zemsky. (Harary Deposition, DE 200-3, p. 4-5, 9,

6

11.)[9] Arnstein even states that they met with Zemsky and Harary before drafting the Second Amended Complaint. (Arnstein Response, DE 227, p. 3, 7.) Harary has also participated in the proceeding by signing Plaintiffs' Responses. As a result, Harary appears to have a substantial interest in the outcome of this action and has substantially participated in the proceedings. Therefore his activities are considered in the determination of sanctions even though he was not a named Plaintiff.

The Amended Complaint alleges that Defendants made material misrepresentations to the SEC. (Amended Complaint, DE 153 p. 14.) However, it was later revealed that the alleged misrepresentation to the SEC concerning the formation of SSLX was accurate and justified. It was actually, Harary and Zemsky who were engaged in a massive scheme to defraud the investors of SSLX by manipulating the market of SSLX stock.[10]

From about January 2004 and continuing through at least September 27, 2005, Harary and Zemsky conspired to commit mail and wire fraud. (Harary Statement of Offense, DE 200-4, p. 40; Zemsky Statement of Offense, DE 217-3, p. 12.) The purpose of the conspiracy was "to fraudulently obtain money, funds and property from clients of AF and other investors . . . to deprive clients of AF of the intangible right to the honest services of their broker. . .including by omissions of material fact and false

---

[9] The CM/ECF pagination is used.

[10] Harary's Statement of Offenses reveals that Harary and his co-conspirators fraudulently obtained proceeds in excess of $3.8 million. (Harary's Statement of Offense, DE 200-4, p. 43.) Zemsky received at least $12,500 in payment for his participation in the fraudulent manipulation of AFHJ stock and $70,000 as payment for his participation in the fraudulent manipulation of SSLX's stock price. (Zemsky's Statement of Offense, DE 217-3 p. 15-16.)

material pretenses, representation and promises and by artificially manipulating the price of the securities of AFHJ and SSLX." (Harary Statement of Offense, DE 200-4, p. 40 - 41; Zemsky Statement of Offense, DE 217-3, p. 13-14.)

The criminal actions against Harary and Zemsky were not made public until September 24, 2007. (Laidlaw Motion, DE 199, p. 16, 20.)[11] Yet Harary signed his Statement of Offense and Plea Agreement on November 2, 2006. (Harary Statement of Offense, Declaration of Gilbert Hoover, DE 200-4, p. 45; Harary's Plea Agreement, Declaration of Gilbert Hoover, DE 200-4, p. 55.) Zemsky signed his Statement of Offense on July 17, 2007 and signed his Plea Agreement on October 18, 2007. (Zemsky Statement of Offense, Laidlaw's Supplemental Exhibits, DE 217-3, p. 17; Zemsky Plea Agreement, Laidlaw's Supplemental Exhibits, DE 217-2, p. 10 .)

In the Statements of Offense, it is evident that Harary and Zemsky were participating in the conspiracy as early as January 2004 and as of March 2005 Zemsky knew and understood the elicit procedure used to obtain the shell corporations. (Zemsky Statement of Offense, DE 217-3, p. 9.) Also by March 2005, Zemsky:

> understood that PH [Paul Harary] and AF were planning to use the shell company [SSLX] in a manner similar to AFHJ to defraud AF's brokerage account customers by having their accounts buy the stock of the new shell company at grossly inflated prices on the open market from nominees of PH [Paul Harary]. . . Zemsky further understood that unbeknownst to AF's brokerage account customers, AF would receive illegal kickback from PH [Paul Harary] of a portion of the profit from these sales. . . Zemsky understood and expected that at a later point in the scheme he would sell free trading shares under his control at artificially inflated and manipulated prices. Knowing all of this Zemsky decided to assist PH [Paul Harary] and AF in their scheme to defraud AF's brokerage account customers.

---

[11] Also on September 24, 2007, the SEC announced its settlement of the enforcement action against Harary and Zemsky. (Laidlaw Motion, DE 199, p. 14.)

(Zemsky Statement of Offense, DE 217-3, p. 9.)

Therefore, by October 2005, when this litigation was initiated, Zemsky and

Harary had knowingly defrauded investors of SSLX and illicitly obtained the shell. Yet

they filed a Complaint alleging that <u>they</u> were defrauded. The Court finds that the filing

of the Complaint and the continued litigation of these claims was a "flagrant abuse of

the judicial process in this case." <u>Martin v. Automobili Lamborghini Exclusive, Inc.</u>, 307

F.3d 1332, 1336-1337 (11th Cir. 2002). The Court agrees that "Plaintiffs misled the

Court into believing that they were victims of fraud when, in fact, they were the

perpetrators of the fraud; they have used the judicial process for improper purposes, in

all likelihood to deflect attention away from Harary and Zemsky in the SEC and criminal

investigations that were going on simultaneously with Plaintiffs' prosecution of this

action." (Laidlaw Motion, DE 199, p. 29.) In light of the clear abuse of the judicial

process and litigation in bad faith, severe sanctions are warranted. Consequently,

Harary and Zemsky shall be assessed, jointly and severally, Laidlaw, Yaw, Lawlor and

Centuria's[12] attorney's fees and costs for defending this action from its inception.

Despite their familial ties to Harary and Zemsky, whether Plaintiffs Cathy Pafumi,

Paris McKinzie and Maria Caporicci had any knowledge of the falsity of the allegations

prior to the public disclosure is unknown and therefore, they cannot be charged with

litigating in bad faith until after September 24, 2007. From September 24, 2007

forward, the litigation was focused on the present Motions for Sanctions. However, in

November 2007, Plaintiffs and Harary filed a document entitled Plaintiffs Request for

---

[12] Davidson withdrew his request for sanctions against Plaintiffs or Harary
individually. (Status Report, DE 265.)

Voluntary Dismissal. (Plaintiffs' Request for Voluntary Dismissal, DE 226, p.1.) All of the Plaintiffs and Harary's signatures appear on the Request which states, "[w]e still believe everything we claimed in our original lawsuit and all subsequent filings." (Id.) Even though the revelations in Harary and Zemsky's Statements of Offense clearly render parts of the Second Amended Complaint false, Pafumi, McKinzie and Caporicci still signed and filed Court documents asserting the truth of these allegations. Therefore, all of the Plaintiffs and Harary shall be assessed, jointly and severally, Laidlaw, Yaw, Lawlor and Centuria's attorney's fees and costs from September 24, 2007 forward. Additionally, in light of the egregious conduct of Plaintiffs and Harary and their use of the judicial system for improper means, the Second Amended Complaint is dismissed with prejudice. Furthermore, all claims previously dismissed without prejudice are now dismissed with prejudice. Plaintiffs and Harary are barred from re-litigating any claims raised in the Complaint, Amended Complaint or Second Amended Complaint.

### 2. The Law Firms

While it is clear Harary and Zemsky operated with full knowledge that the claims brought in bad faith, the Court finds that the law firms of Adorno & Yoss ("Adorno") and Arnstein & Lehr ("Arnstein") did not knowingly or recklessly pursue a frivolous claim or engage in litigation tactics that needlessly obstructed the litigation of non-frivolous claims.

The facts presented in this action are similar to those in Aetna Insurance Co. v. Meeker, 953 F.2d 1328 (11th Cir. 1992). In Aetna, the Court reasoned that counsel for

Defendant should have known, as of August 1998, that "there was no factual basis for his client's counterclaims." Meeker, 953 F.2d at 1331. Yet, counsel signed the opposition to the motion for summary judgment. Id. The District Court "relied upon the fact that by August 1988, various investigative reports of the raised vessel indicated that the Head First had been both stolen and intentionally sunk, and that by that date Meeker had been indicted in the United States District Court for the Middle District of Alabama upon two counts of mail fraud and one count of wire fraud." Id., at 1332. Therefore, Rule 11 sanctions were warranted for the continued litigation of baseless claims. Id.

Here, the criminal actions against Harary and Zemsky were not made public until September 24, 2007. (Laidlaw Motion, DE 199, p. 16, 20.) Also on September 24, 2007, the SEC announced its settlement of the enforcement action against Harary and Zemsky. (Laidlaw Motion, DE 199, p. 14.) There is no evidence that the attorneys for plaintiffs had knowledge of the falsity of any of the allegations before September 24, 2007. [13] In fact, Arnstein states that it did not find out about the SEC settlement or criminal action until September 25, 2007, when it received a phone call from opposing counsel. (Arnstein Response, DE 227, p. 3.) Additionally, Zemsky and Harary specifically kept information concerning their criminal matters from Arnstein. (Arnstein Response, DE 227, p. 4-8.) Shortly after learning of the SEC settlement and the criminal actions, Arnstein moved to withdraw. (Motion to Withdraw, DE 195.) Therefore,

---

[13] As of September 24, 2007, Adorno was no longer representing Plaintiffs and therefore did not litigate in bad faith. As a result, the Court did not require them to respond to the various Motions to Dismiss and for Sanctions. (Order, DE 220.) Adorno is not subject to sanctions pursuant to the Court's inherent powers.

the Court finds that Arnstein did not litigate claims in bad faith and  is not subject to sanctions pursuant to the Court's inherent powers.

## B. Sanctions Pursuant to the PSLRA

The central purpose of the PSLRA is to prevent "frivolous lawsuits initiated to intimidate defendants and force them into a quick settlement." Smith v. Smith, 184 F.R.D. 420, 423 (S.D. Fla. 1998); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81 (2006). The PSLRA requires courts, upon final adjudication of a private securities action, to evaluate all complaints, responsive pleadings and dispositive motions to determine whether they violate Rule 11(b). It does not alter the standards for finding a Rule 11 violation, but functions solely to require courts to conduct a Rule 11 evaluation after entering final judgment in a claim for securities fraud and to impose sanctions when a violation is found. Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir. 1999). Regardless, "sanctions are to be imposed sparingly, as they can have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel." Hartmarx Corp. v. Abboud, 326 F.3d 862, 867 (7th Cir. 2003) (internal citations omitted).

Rule 11(b) provides:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

12

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

As the 1993 Advisory Committee Note to Rule 11(b)(2) explains, the rule

"'establishes an objective standard, intended to eliminate any 'empty-head pure-heart'

justification for patently frivolous arguments.'" See Simon DeBartolo, 186 F.3d at 166

(quoting Advisory Committee Notes).  While frivolous claims should be sanctioned,

claims alleging innovative interpretations of the law do not warrant sanctions. Id.  In

making this determination, "'the extent to which a litigant has researched the issues and

found some support for its theories even in minority opinions, in law review articles, or

through consultation with other attorneys should certainly be taken into account in

determining whether paragraph (2) has been violated.'" Simon DeBartolo, 186 F.3d at

166 (quoting Advisory Committee Notes).  Arguments for a change of law, even if not

specifically identified, should be viewed with tolerance. Id.

If a court determines that Rule 11(b) has been violated, the PSLRA requires the

district court to impose appropriate sanctions. Id.  It is presumed that where a

responsive pleading or dispositive motion fails to comply with the requirements of Rule

11(b), the appropriate sanctions to be imposed depend upon the severity of the

violation. Adams v. IntraLinks, Inc., Case No. 03 Civ 5384, 2005 WL 1863829, at *3 (S.D.N.Y. Aug. 5, 2005). If the violation is "substantial," the court should award attorneys' fees and costs incurred by the opposing party in the entire action. 15 U.S.C. § 78u-4(c)(3)(A)(ii).

The party upon whom sanctions are to be imposed can rebut the presumption regarding payment of fees and costs by showing either that: 1) the award of fees would be unjust or impose an unreasonable burden on the party and failure to award sanctions would not impose an even greater burden on the opposing party; or 2) the Rule 11 violation was de minimis. If it is determined that a party violated Rule 11(b)(2) and that sanctions should be imposed, monetary sanctions should be awarded against counsel and not the represented party because "'monetary responsibility for such violations is more properly placed solely on the party's attorneys.'" Simon DeBartolo, 186 F.3d at 166 (quoting Advisory Committee Notes). Unlike a R. 11(b)(2) violation, a violation of 11(b)(1) for bringing a complaint for an improper purpose would warrant the imposition of sanctions on counsel and the party. Simon De Bartolo, 186 F.3d at 176 - 177.

After a hearing on the matter, the Court previously denied Defendants' PSLRA Motions for Sanctions [DEs 104, 105, 106 and 128] as prematurely filed and stated that the Motions need not be renewed upon final adjudication of this matter. (Order Denying Defendants' Motions for Sanctions as Prematurely Filed, DE 142.) The Court has now dismissed the Second Amended Complaint with prejudice and will consider the original PSLRA Motions for Sanction as well as their supplement.

14

### 1. The Law Firms

The original PSLRA Motions for Sanctions [DEs 104, 105, 106] allege that Plaintiffs' counsel, Adorno, ignored well-settled procedural and substantive law resulting in the filing of a patently frivolous lawsuit. Defendants argue that they were required to expend unnecessary time and money defending an action that fell woefully short of stating a valid claim. Defendants Lawlor and Centuria also moved for sanctions pursuant to Federal Rule of Civil Procedure 11 for the "baseless" Motion for Reconsideration [DE 128].

"Sanctions should only be imposed where it is patently clear that a claim has absolutely no chance of success." Adams, 2005 WL 1863829, at *3 (internal quotation omitted). Here, the Amended Complaint and Motion for Reconsideration did succeed in part. Indeed, the arguments made in the Motion for Reconsideration and during the hearing led the Court to grant in part Plaintiffs' Motion for Reconsideration. Additionally, counsel's arguments regarding standing and the application of Merrill Lynch, Pierce, Feener & Smith, Inc. v. Dabit, 126 S.Ct. 1503 (2006) added credence to Plaintiffs' contention that the instant action raised non- frivolous arguments for an extension or modification of securities law. The law is often subject to differing interpretations and Plaintiffs' counsel should not be sanctioned merely because this Court did not choose to adopt their proffered interpretation of securities law. The Amended Complaint and Motion for Reconsideration were not presented for any improper purpose and the legal contentions were warranted by a non-frivolous argument for extending the law. See Fed.R.Civ.P. 11(b).

There is no evidence that Adorno intentionally overlooked the stringent pleading

15

requirements of Federal Rule of Civil Procedure 9(b) in the filing of the Amended

Complaint and both the Motion for Reconsideration and the Amended Complaint

included detailed factual allegations and cogent legal arguments.  The implications of

the criminal actions and the SEC Enforcement Action did not become public until

September 24, 2007, long after Adorno withdrew as counsel.  For the foregoing

reasons, and in light of the arguable claims for relief, the Court finds that the imposition

of sanctions against Adorno as requested in the original PSLRA Motions [DEs 104,

105, 106, 128] are not warranted.

However, additional information has been provided to the Court and the original

PSLRA motions have been supplemented concerning the activity of Plaintiffs and their

subsequent counsel, Arnstein.  Arnstein avers that prior to filing the Second Amended

Complaint, they consulted with the Zemsky and Harary and reviewed the documents

provided.  See, Simon DeBartolo, 186 F.3d at 166; (Arnstein Response to Motions to

Dismiss and for Sanctions, DE 227, p. 7.)  The Court finds that Arnstein conducted a

reasonable investigation of the claims that were put forth in the Second Amended

Complaint.  (Arnstein Response to Motions to Dismiss and for Sanctions, DE 227, p. 7.)

However, they were blind-sided by their clients who misled them about the criminal

actions pending against Zemsky and Harary and the possible implications those cases

could have on the present action.  (Id., at 8.)  Once the criminal actions and the

settlement of the SEC Enforcement Action were revealed, Arnstein sought to withdraw

as counsel.  The Court finds that  Arnstein did not file the Second Amended Complaint

or continue to litigate this action for any improper purpose and the legal contentions

were warranted by a non-frivolous argument for extending the law.  See Fed.R.Civ.P.

11(b).  Therefore, Arnstein did not substantially fail to comply with any requirement of Rule 11(b) and sanctions are not warranted under the PSLRA.

### 2. Plaintiffs and Paul Harary

Defendants do not provide a basis for sanctioning Harary under the PSLRA. Since the Court has already determined that sanctions against Harary are warranted under the inherent powers of the Court, further inquiry into an additional basis for awarding sanctions against Harary is unnecessary.  However, the PSLRA does provide an additional basis for sanctioning Plaintiffs.

A violation of R. 11(b)(1) for bringing a complaint for improper purpose warrants the imposition of sanctions on counsel and the party.  Simon De Bartolo, 186 F.3d at 176 – 177.  Defendants argue that Plaintiffs used the judicial process for improper purpose to deflect attention away from Harary and Zemsky in the SEC and criminal investigations.  (Davidson Motion to Dismiss and for Sanctions, DE 199, p. 29.)  As discussed above, the Court whole heartedly agrees that Zemsky used the Courts to divert attention away from the SEC and criminal investigations.  Therefore, R. 11(b)(1) sanctions are appropriate.

Violations of R. 11(b)(2) for bringing claims not warranted by existing law or by a nonfrivolous argument for extending the law are usually awarded against counsel and not the represented party.  Simon De Bartolo, 186 F.3d at 176 – 177.  However, as of October 29, 2007, Plaintiffs were proceeding *pro se* and continued to assert that the original complaint was properly filed.  For example, Plaintiffs' Request for Voluntary Dismissal stated that "[w]e still believe everything we claimed in our original lawsuit and all subsequent filings." (Plaintiffs' Request for Voluntary Dismissal, DE 226, p.1.)  The

Complaint contains allegations of false reporting to the SEC that are directly refuted by the guilty pleas in the criminal actions against Harary and Zemsky. The failure to acknowledge the falsity of allegations and the continued litigation of false claims was a violation of Rule 11(b)(2). Plaintiffs knew that their claims that Defendants made misrepresentations to the SEC were false.

As detailed above, the Plaintiffs have committed substantial violations of R. 11(b). The Court is particularly disturbed by Zemsky's assertion of fraud when Zemsky himself was involved in a conspiracy to defraud SSLX investors. Furthermore, Plaintiffs asserted baseless claims that Defendants made misrepresentations to the SEC and continued litigating this action even after the falsity of these allegations were brought to light. As a result of the substantial violations of R. 11(b) the Court will award attorneys' fees and costs incurred by the opposing parties during the entire action. 15 U.S.C. § 78u-4(c)(3)(A)(ii).

### III. CONCLUSION

In general, Courts must afford a sanctioned party due process which requires that the party be given fair notice that its conduct may warrant sanctions and the reasons why. In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1307 (11th Cir. 2006). "The party subject to sanctions must be afforded the opportunity to justify its actions either orally or in writing." Id. Additionally, pursuant to the PSLRA, "[p]rior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond." 15 U.S.C. § 78u-4(c)(2)

In light of the copious filings of Plaintiffs and Harary, the Court does not feel a

18

subsequent hearing on the Motions to Dismiss and for Sanctions is necessary or warranted. The parties sanctioned were provided ample notice of the possibility of sanctions and multiple opportunities to explain their actions. It is therefore **ORDERED AND ADJUDGED** as follows:

1.  Defendant Laidlaw & Company (UK) Ltd's Motion for Hearing  [DE 201] is **DENIED**.

2.  Defendants' PSLRA Motions for Sanctions [DEs 104, 105, 106, 128] are **DENIED**.

3.  Defendant Laidlaw & Company (UK) Ltd's Motion to Dismiss and for Sanctions [DE 199] is **GRANTED IN PART**.

    a.  The Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

    b.  After a determination of their ability to pay, Harary and Zemsky will be assessed Laidlaw's attorneys' fees and costs, jointly and severally from the inception of this action in October 2005 until September 24, 2007. From September 24, 2007 until present, all Plaintiffs and Harary shall be assessed jointly and severally Laidlaw's attorneys' fees and costs.

4.  Defendant Davidson withdrew his request for sanctions against Plaintiffs or Harary, individually [DEs 261-2, 265]. Therefore, the only remaining claims for sanctions are against the attorneys [DEs 203, 229] which are hereby **DENIED**.

5.  Defendants Lawlor and Centuria Corporation's Motion to Dismiss and For Sanctions [DE 205] is **GRANTED IN PART**.

    a.  The previous claims against Lawlor and Centuria Corporation that were

dismissed without prejudice are now **DISMISSED WITH PREJUDICE**.

b.   After a determination of their ability to pay, Harary and Zemsky will be assessed Lawlor and Centuria Corporation's attorneys' fees and costs, jointly and severally from the inception of this action in October 2005 until September 24, 2007.  From September 24, 2007 until present, all Plaintiffs and Harary shall be assessed jointly and severally Lawlor and Centuria Corporation's attorneys' fees and costs.

6.   Defendant Yaw's Motion to Dismiss [DE 221] is **GRANTED IN PART**.

a.   As stated above, the Second Amended Complaint is **DISMISSED WITH PREJUDICE.**

b.   After a determination of their ability to pay, Harary and Zemsky will be assessed Yaw's attorneys' fees and costs, jointly and severally from the inception of this action in October 2005 until September 24, 2007.  From September 24, 2007 until present, all Plaintiffs and Harary shall be assessed jointly and severally Yaw's attorneys' fees and costs.

7.   By no later than October 1, 2008, each Plaintiff individually, and Harary shall submit to the Court a detailed affidavit of their financial status.[14]  The affidavits must be supported by documentary evidence.

8.   By no later than October 1, 2008,  Defendants shall submit an itemization of their attorneys' fees and costs.

---

[14] In accordance with <u>Martin v. Automobili Lamborghini Exclusive, Inc.</u>, 307 F.3d 1332, 1336 - 1337 (11th Cir. 2002), when determining the final amount of sanctions, the Court will consider Plaintiffs' and Harary's ability to pay.

9.    The Clerk shall **CLOSE THIS CASE** and **DENY** all pending motions as moot.

10.   The Court shall retain jurisdiction to determine the final amount of sanctions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 2ND day of September, 2008.

**JAMES I. COHN**
**United States District Court**

Copies to:
All counsel of record on CM\ECF
*Pro se* parties

21